```
              IN THE UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF PUERTO RICO
```

| | |
|---|---|
| HERBERT W. BROWN III, et al.,<br><br>    Plaintiffs<br><br>        v.<br><br>COLEGIO DE ABOGADOS DE PUERTO RICO,<br><br>    Defendant | CIVIL NO. 06-1645 (JP) |

**CIVIL CONTEMPT ORDER**

Before the Court are Plaintiffs' motions (**Nos. 306 and 311**) for a finding of civil contempt and/or sanctions against Defendant Colegio de Abogados de Puerto Rico ("Colegio" or "Defendant") and its President, Osvaldo Toledo-Martinez ("Toledo"). For the reasons stated herein and during the hearing held on February 8, 2011, said motions were **GRANTED**, effective February 8, 2011 after the conclusion of the hearing.

**I.   FACTUAL AND PROCEDURAL BACKGROUND**

On July 23, 2010, the First Circuit Court of Appeals issued its Opinion and Order and Judgment (Nos. 161 and 162) affirming the Court's determination of liability, and granting of injunctive relief against Defendant. The Court's Judgment was vacated insofar as it determined the amount of damages. The First Circuit ordered that

CIVIL NO. 06-1645 (JP)          -2-

notice and opportunity to opt out of the class be given to the class members prior to the Court reinstating its damage award.[1]

In compliance with the First Circuit's mandate, the Court and the parties began the process of preparing the Class Action Notice in order to provide class members with the opportunity to opt out of the class and to advise them of their rights. Prior to the Notice of Class Action being issued, Plaintiffs filed a motion (No. 188) requesting a protective order against Defendant until the notice procedures had been completed since Colegio was issuing misleading and inaccurate communications to class members. After considering the parties' arguments, the Court found that Plaintiffs were entitled to a protective order in light of Colegio's misleading communications (No. 202). As such,icourt entered the following protective order:

> [T]he Court hereby PROHIBITS Defendant Colegio and any and all attorneys representing Defendant in the instant case, without prior leave of Court, from engaging in any direct or indirect contact or communication with any class members regarding this litigation or the claims therein until class notice has been provided and the opt out procedures have been completed. Defendant Colegio MAY continue to engage in regular business communications with class members, unrelated to this case, that occur in the ordinary course of business.

---

1. The Colegio appealed the First Circuit's decision. Subsequently, the United States Supreme Court denied Colegio's petition for writ of certiorari (No. 287-1).

CIVIL NO. 06-1645 (JP)          -3-

Defendant appealed the Court's protective order. Colegio also sought a stay from the First Circuit that was subsequently denied (303-1).[2]

The preparation of the Class Action Notice was completed and all the notices were mailed on January 26, 2011. The notice established a clear and simple opt out procedure. See Section XII of Attachment A to this Order. However, **after** the notice had been mailed, Colegio for the first time requested that a particular opt out form be provided to class members by Colegio itself. See Exhibit 6. After examining Defendant's proposed form, the Court denied the request in a reasoned order (No. 305). Also, in the same order, the Court instructed Colegio on the procedures it should follow if any class members inquired about the case in order to avoid running afoul of the protective order.

On February 3, 2011, Plaintiffs filed a motion for an order to show cause because they became aware of an email being circulated by class members which contained the same opt out form rejected by this

---

2.   In denying the motion to stay, the First Circuit stated:

> In support of its constitutional challenge to the protective order, Colegio's reliance upon Gulf Oil Co. v. Bernard, 452 U.S. 89 (1981) seems misplaced. The facts of this case are distinguishable from the facts of Gulf because the record suggests that here the district court made findings of fact justifying the limitations imposed upon Colegio, and narrowly tailored such limits to minimize the restrictions on speech while protecting against the type of misleading communications in which it found that Colegio had engaged. Moreover, the protective order applied only to communications regarding the litigation, only during the one-month opt-out period, and only to communications made without prior court approval. On this record, it does not appear likely that Colegio could prevail on its constitutional claim.

CIVIL NO. 06-1645 (JP)           -4-

Court (No. 306). The Court ordered Colegio to show cause on or before February 8, 2011 (Nos. 307 and 314). On February 7, 2011, Plaintiffs filed another motion (No. 311) for an order to show cause arguing that Colegio violated the protective order and other orders of the Court when Toledo sent out two separate emails to class members, when he went on radio to talk about this case, and when a website related to this case was created. The Court set a hearing for 5:00 p.m. on February 8, 2011, and ordered Colegio and Toledo to show cause as to why the Court should not find them in contempt of court and/or impose sanctions on them for the conduct described in both of Plaintiffs' motions for orders to show cause (No. 315). Surprisingly, Toledo did not appear at the hearing and Colegio offered no evidence.

## II. **HEARING**

At the hearing, Plaintiffs presented evidence regarding all the alleged violations of the Court's orders. With regard to the opt out form being circulated by class members, Plaintiffs showed that said opt out form was the same form that the Court had expressly rejected in its previous order. See Exhibits 6 and 7. Moreover, Plaintiffs showed that the form being circulated by class members via email was the form created by Colegio since the metadata of the form identified an employee of Colegio, Vanessa Sanchez, as the author of the file. See Exhibit 7.

Further, Plaintiffs presented evidence as to Toledo's three communications regarding this case. Plaintiffs first presented an

CIVIL NO. 06-1645 (JP)              -5-

email sent out at 3:30 p.m. on February 7, 2011. See Exhibit 1. The email directly referred to this case including the alleged reasons behind Colegio's action to continue charging the compulsory life insurance after the Romero decision, requesting that class members opt out and providing information on the opt out procedures. Plaintiffs also submitted a second email sent out by Toledo on February 7, 2011. See Exhibit 4. In said email, Toledo defended the Colegio's actions with regard to the compulsory life insurance. Also, he spoke about the facts and procedural history of this case, ignoring what the Court had decided and emphasizing Colegio's previously rejected theories about the case.

Plaintiffs also presented a tape of Toledo's comments made on a radio show on February 7, 2011. See Exhibit 3. On the radio show, Toledo misrepresented the status of the litigation, and the various district court and court of appeals decisions rendered in this case. In addition, Toledo made unsupported allegations of ideological conspiracies between federal courts and Plaintiffs to destroy the Colegio's name, reputation and identity in Puerto Rico's society. Toledo acknowledged that he was speaking on the radio show in direct violation of the Court's protective order. Toledo spoke about this case, the opt out procedures, and requested that class members opt out. He also admitted that he did not follow the Court's procedure on instructing attorneys inquiring about the opt out procedures.

CIVIL NO. 06-1645 (JP)            -6-

Further, Toledo admitted that he ordered Colegio to email the opt out form created by him to class members.

Lastly, Plaintiffs presented a printout from the website www.yonosoydelaclase.com. See Exhibit 2. The language on the printout introduced by Plaintiffs was essentially the same language used by Toledo in his email labeled as Exhibit 1. Also, the website presented the insurance information for the relevant period to this case that was also found in Toledo's email labeled as Exhibit 1. Said insurance information was only in the possession of Colegio.[3] From all of this circumstantial evidence and Colegio's failure to explain any of it, it is clear that Defendant Colegio was directly or, at the very least, indirectly involved with the website.

Defendant then presented no substantive arguments in opposition to Plaintiffs' evidence. As previously stated, no evidence was presented by Defendant. Defendant's attorneys stated that they were not involved in any of the conduct of Colegio and/or Toledo. The Court highlights that Toledo did not appear at the hearing even though he was ordered by the Court to be present at the hearing and, as acknowledged by Defendant's attorney, Toledo was notified of the Court's show cause order directing him to be present at the hearing.[4]

---

3.   Further, a press release was issued in which Toledo made more statements about this case. See Court's Exhibit 1.

4.   The Court notes that Toledo did have his own attorney present at the hearing.

CIVIL NO. 06-1645 (JP)          -7-

### III. **REQUEST FOR FINDING OF CIVIL CONTEMPT AND/OR SANCTIONS**

**A.     Legal Standard for Civil Contempt**

For the Court to enter a finding of civil contempt against Defendant, the Court must find: (1) that Defendant had notice of the Court's order; (2) that the Court's order "was clear, definite, and unambiguous;" (3) that Defendant had the ability to comply with the Court's order; and (4) that Defendant violated the order. United States v. Saccoccia, 433 F.3d 19, 26 (1st Cir. 2005). The party seeking the finding of contempt must prove civil contempt by clear and convincing evidence. Project B.A.S.I.C. v. Kemp, 947 F.2d 11, 16 (1st Cir. 1991).

Upon a finding of civil contempt, the Court has broad discretion in fashioning the appropriate coercive remedy. See Goya Foods, Inc. v. Wallack Mgmt. Co., 344 F.3d 16, 21 (1st Cir. 2003). Civil contempt can be "imposed to compel compliance with a court order or to compensate a party harmed by non-compliance." Saccoccia, 433 F.3d at 27; see also Int'l Union, United Mine Workers of Am. v. Bagwell, 512 U.S. 821, 827 (1994) (stating that the sanctions that may be imposed in a civil contempt proceeding are those "designed to compel future compliance with a court order, [which] are considered to be coercive and avoidable through obedience").

**B.     Civil Contempt Requirements**

After considering all the arguments and evidence, the Court determines that Plaintiffs have shown by clear and convincing

CIVIL NO. 06-1645 (JP)          -8-

evidence that a finding of civil contempt against Defendant and Toledo is warranted. Defendant and its President had notice of the Court's orders when said orders were entered into the Court's electronic docketing system (CM-ECF) which provides instantaneous notification. Specifically, they had notice of the Court orders that: (1) granted the protective order (No. 202); and (2) denied Defendant's untimely request for an opt out form and detailed the procedures to be followed by Colegio when class members inquired about the opt out procedures (No. 305). Further, Toledo admitted that he was aware of both orders while on the radio show, and boasted about violating the Court's orders.

The Court's orders (Nos. 202 and 305) are "clear, definite, and unambiguous." The protective order prohibited Defendant from engaging in any direct or indirect contact or communication with the class members relating to this case, without leave of Court, until the opt out procedures were completed. Also, the Court directly rejected the opt out form proposed by Colegio and instructed Colegio on the exact procedures to be followed if class members inquired about opting out.

The Court finds that Defendant and Toledo could have easily complied with the Court's orders by either requesting leave of Court to communicate with class members or avoiding communication with class members until the opt out procedures were completed. Defendant could have complied with the Court's orders by not providing class members with the opt out form expressly rejected by the Court and by

CIVIL NO. 06-1645 (JP)              -9-

following the procedures established by the Court for dealing with class member inquiries.

Plaintiffs demonstrated by clear and convincing evidence that Defendant and Toledo breached the Court's orders. The protective order was violated by the two emails, the website, the opt out form provided by Colegio, and by Toledo's statements on the radio show. Both emails violated the protective order because: (1) they were issued by Toledo; (2) they were directed at class members without leave of Court; and (3) they addressed issues in this litigation in a misleading and unprofessional manner. Also, his statements were bordering on the unethical.

The Court also finds that Colegio was involved directly or, at the very least, indirectly with the website. The Court reaches this conclusion based on the evidence that the website contains almost verbatim one of the emails sent by Toledo and provides insurance information only available to Colegio. This information by itself is sufficient to find that Colegio was at the very least indirectly involved with the website.

However, even more telling of the Colegio's involvement with the website, is the fact that the website was last updated on February 5, 2011.[5] That is two days prior to Toledo sending his email which

---

5.   The Court was able to obtain the date of the last update to the website by performing a simple public internet search on the morning of February 9, 2011. With the website address the Court was able to identify the website's IP Address, 209.62.36.21. Checking said IP Address on the databases for the companies InterNIC, WHOIS, and ARIN, the Court was able to identify SiteGround.com Inc. as the company hosting the website, and GoDaddy.com, Inc. as the company providing the domain name for the website. Most importantly, on

CIVIL NO. 06-1645 (JP)          -10-

contained most of the language used on the website and the insurance information which was in the sole possession of Colegio. From this information, the Court corroborates that Colegio was directly involved with the website in question. The Court determines that the information on the website violated the protective order because it also inappropriately addressed the issues in this case and was directed at class members without leave of Court.

Plaintiffs also showed that the opt out form, which was being circulated by class members, was the same form presented by Colegio to the Court and was created by a Colegio employee. Also, on the radio show, Colegio's President admitted that he ordered the opt out form prepared by him to be sent out to class members. On the radio show, the use of the internet as a means of distributing the information was mentioned. Said actions show that Colegio violated the Court's protective order by directly or indirectly communicating with class members and providing them with said form. Moreover, Colegio violated the Court's order denying the proposed form by providing class members with the rejected opt out form.

Lastly, on the radio show, Toledo admitted to willfully violating both of the Court's orders. He stated that he was aware of the protective order and that he was aware that he was violating said

---

each of these databases that Court found that the last date the website was updated was on February 5, 2011. Contrary to what is customarily seen in domain and hosting public records, the ownership and administration of the site is blocked and unavailable, something one would associate with the suspicious behavior of the kind we have found in this case.

CIVIL NO. 06-1645 (JP)        -11-

order by speaking about the case on the radio show. Also, Toledo admitted that he intentionally ignored the Court's order on the procedures for handling inquiries by class members.

Based on the clear and convincing evidence available on the record, the Court found that Defendant Colegio and Toledo were and are in **CIVIL CONTEMPT**.[6]

### C.   Sanctions for Civil Contempt

The Court is faced with the very difficult issue of determining which sanctions to impose on Defendant and Toledo for their blatant violations of the Court's orders. The Court must fashion sanctions that will ensure compliance with the Court's orders and at the same time correct some of the damage done by their violations.

Here, this task is particularly difficult because the Colegio has shown a complete disregard for court orders. The very reason why this case was initiated was because Colegio ignored the previous court orders in the Romero decision where, as in this case, Judge Patti Saris had to find Colegio in civil contempt. Instead of showing respect for the Court's orders, Colegio has continued to undermine the Court's orders in this case.[7] Colegio's intent is clear. The

---

6.   Many of these communications issued by Colegio and Toledo in violation of the Court's orders restate the same misleading and inaccurate statements that led the Court to issue the protective order in this case.

7.   Perhaps the most troubling issue of all is that Colegio is supposed to represent one of the most important principles in society, the rule of law. By ignoring Court orders, Colegio is undermining this principle and making clear that it considers itself above the law.

CIVIL NO. 06-1645 (JP)          -12-

Court cannot allow this behavior to continue. Colegio's serial violations and conduct lead the Court to conclude that Colegio will continue to violate Court orders unless it is severely sanctioned. Therefore, the Court enters the following sanctions:

1. **On or before 5:00 p.m. on February 10, 2011,** Colegio and Toledo **SHALL** pay jointly and severally a monetary sanction in the amount of **TEN THOUSAND DOLLARS** (**$10,000.00**). Failure to pay said sanction will result in the incarceration of Toledo until the sanction is paid.

2. Every opt out submitted in the form listed as Exhibit 6 or a similar form is hereby **EXCLUDED.** Rust Consulting is directed not to count said forms when determining who has opted out.

3. If Colegio or any of its Board of Directors, administrators, management, agents or servants further violate a Court order entered in this case, said individual and Colegio **SHALL** be subject to same or higher monetary sanctions and **SHALL** be incarcerated until the conclusion of the opt out procedures on February 26, 2011.

4. Colegio **SHALL** bear the costs of translating all the exhibits related to the appeal of this Civil Contempt Order.

Further, the Court hereby **ORDERS** GoDaddy.com, Inc., Domains by Proxy, Inc.,[8] and SiteGround.com Inc. to **TAKE DOWN** the website www.yonosoydelaclase.com immediately. Also, **on or before February 16, 2011,** GoDaddy.com, Inc., Domains by Proxy, Inc., and SiteGround.com Inc. **SHALL** provide the Court with the name and address of the individual(s) who contracted their services in relation to the website www.yonosoydelaclase.com. The Clerk of Court will notify

---

8. Domains by Proxy, Inc. is listed as the Administrative Contact for the website in question here.

CIVIL NO. 06-1645 (JP)          -13-

GoDaddy.com, Inc., Domains by Proxy, Inc., and SiteGround.com Inc. at the addresses listed below. Also, the U.S. Marshal's Office for the District of Puerto Rico, U.S. Marshal's Office for the District of Columbia, and the U.S. Marshal's Office for the District of Arizona will serve a copy of this order at the addresses listed below.

1.  GoDaddy.com, Inc.
    14455 N. Hayden Road
    Suite 219
    Scottsdale, AZ 85260
    Telephone: (480)505-8899
    Fax: (480)505-8844

2.  Domains by Proxy, Inc.
    15111 N. Hayden Road
    Suite 160, PMB 353
    Scottsdale, AZ 85260
    Telephone:(480)624-2599
    Fax: (480)624-2598

3.  SiteGround.com Inc.
    c/o David Snead
    Attention: SiteGround Legal Notices
    P.O. Box 48010
    Washington, D.C. 20002
    Email:david.snead@dsnead.com
    Telephone: (202)558-2366
    Fax: (202)318-4089

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 9th day of February, 2011.

S/JOSE ANTONIO FUSTE
JOSÉ ANTONIO FUSTÉ
CHIEF U.S. DISTRICT JUDGE