IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| HERBERT W. BROWN III, et al.,<br><br>    Plaintiffs<br><br>       v.<br><br>COLEGIO DE ABOGADOS DE PUERTO RICO,<br><br>    Defendant | CIVIL NO. 06-1645 (JP) |

**O R D E R**

Written on the building, where the Colegio de Abogados de Puerto Rico ("Colegio") is located, is the phrase "Honrando la Toga." The phrase means honoring the robe or honoring the legal profession. This phrase should be more than simply words; it should be what Colegio should strive to represent. Unfortunately, the actions of Colegio in this case have made it clear that these are just hollow words without any meaning to the Colegio of recent times.

The undersigned was admitted to practice law in 1968 and became a member of the Colegio as required by law.  Those were the golden days of Colegio, when Colegio respected and valued its members. I have memorabilia of the many times I participated  as a panelist in Colegio-sponsored seminars on matters of Federal jurisdiction and Admiralty law. Sadly, since 2002, Colegio's leadership has dug Colegio's grave. Through their actions they have actually dismantled the institution.

CIVIL NO. 06-1645 (JP)          -2-

## I.

## **INTRODUCTION**

This case arises from a life insurance program which Colegio required its members, all the attorneys authorized to practice in the Puerto Rico local courts, to take part in. In 2002, Judge Patti B. Saris determined, in Romero v. Colegio de Abogados de Puerto Rico, Civil Case No. 94-2503, that Colegio's act of requiring its members to take part in the life insurance program as a condition for practicing law violated the First Amendment of the United States Constitution.

To the surprise of all at that time,[1] Colegio ignored the decision of Judge Saris and continued violating the First Amendment rights of its members. Not only did Colegio continue to force its members to pay for the life insurance which was unlawful, but it also did not fully advise its members that they no longer had to purchase the insurance, threw obstacles in front of those trying to opt-out, delayed refunds, and even moved to disbar one individual who correctly refused to pay that portion of his dues attributable to the insurance program. Brown v. Colegio de Abogados de Puerto Rico, 613 F.3d 44, 49 (1st Cir. 2010).

On June 27, 2006, Herbert W. Brown III, José L. Ubarri, and David W. Román ("Class Plaintiffs") filed the instant action against

---

1.   Sadly, Colegio's well-documented history in this case as a serial violator of Court orders makes it clear that any further violation of a Court order by Colegio cannot be considered a surprise.

CIVIL NO. 06-1645 (JP)          -3-

Colegio. Thereafter, the Court certified two classes, one for declaratory relief and one for damages, and granted summary judgment for Class Plaintiffs finding that the Romero decision had preclusive effect in the instant action. The Court entered Final Judgment, which was later amended, finding that Colegio had violated the constitutional rights of its members and granting $4,156,988.70 in damages, plus costs, interest and attorney's fees.[2]

The First Circuit Court of Appeals issued an Opinion on July 23, 2010. In it, the First Circuit affirmed this Court's finding of liability, that Colegio violated its members' constitutional rights, and granting of injunctive relief. Moreover, it affirmed the classes certified in this case. However, the First Circuit vacated the Judgment insofar as it determined the amount of damages and ordered that class members be provided with notice including their right to opt-out. After the expiration of the notice period, the First Circuit authorized the Court to reinstate the damage award as calculated before but this time excluding damages otherwise attributable to those who opt-out of the class.

---

2.   In what can only be classified as a deceptive tactic, Colegio presented a "resolution" purporting to show that Colegio's members repudiated the instant action. Unfortunately for Colegio, the details of the meeting revealed that said "resolution" was passed in a sham meeting. See Brown, 613 F.3d at 50 ("[i]t appears from the record that the meeting that adopted the resolution was attended by only a few hundred of Colegio's 12,000 members; an affidavit suggests that the matter was voted on but never discussed; and there is no information from Colegio to indicate what was actually disclosed to the members about the nature of the suit, the interests of the members in the suit, or the basis of opposing a law suit aiming to recover damages for the members. **Nor do Colegio's earlier tactics inspire confidence in the resolution**.") (emphasis added).

CIVIL NO. 06-1645 (JP)          -4-

In full compliance with the First Circuit's Opinion, on September 2, 2010, the parties and the Court began the process of preparing a Class Action Notice to be issued to class members providing them with the Court-approved opt-out procedures. However, prior to the issuance of the Class Action Notice and to the Court approving the procedures for opting-out, Colegio began issuing communications (Nos. 183 and 188) to class members requesting that they opt-out through a form distributed by Colegio.

Class Plaintiffs filed a motion for a protective order arguing that the communications being disseminated by Colegio were misleading. At that time, Judge Jaime Pieras Jr. had no choice but to enter a protective order as it had become quite clear the Colegio intended to continue with its deceptive tactics. After determining that the communications were both misleading and aimed at coercing class members into opting-out,[3] the Court entered a narrowly-tailored protective order precluding Colegio from communicating directly or indirectly with class members, without prior leave of Court, regarding this litigation or the claims therein until the Class

---

3.  They were misleading because Colegio was informing class members that Colegio was authorized to establish the mandatory insurance program, even though this Court and the First Circuit had already established that said program violated the constitutional rights of class members. Colegio also conveniently neglected to mention that it had been knowingly violating the rights of class members since 2002. Further, Colegio attempted to coerce class members into opting-out by speculating that Class Plaintiffs brought this action to destroy Colegio and to benefit financially. Again conveniently, no mention was made of the possibility that this action was brought to protect the rights of class members.

CIVIL NO. 06-1645 (JP)          -5-

Action Notice was provided and the opt-out procedures were completed (No. 202).

As was its right, Colegio appealed the Court's Order granting the protective order (No. 214). The appeal is still pending. On January 26, 2011, the Class Action Notice was mailed in this case. In it, class members were provided with neutral and accurate information about the case, with simple procedures for opting-out, and with the rights that all class members had. To opt-out, class members had to mail and postmark a letter, on or before February 26, 2011, to the Brown v. Colegio de Abogados Administrator (the "Administrator") stating "I do not want to be part of the Damages Class in Brown v. Colegio de Abogados de Puerto Rico, CV 06-1645 (JP)." Said request had to be signed, and include the name, address, and telephone number of the class member. Also, the notice stated that the address listed should be the address to which the notice was mailed so that individual class members could be easily identified. Said Class Action Notice provided everything that the First Circuit made clear was required to comply with due process and the Federal Rules of Civil Procedure. Brown, 613 F.3d at 51 (explaining what needed to be included in the Class Action Notice).

In addition to mailing the Class Action Notice to class members, said notice was published on Colegio's and this Court's website, and information on opting-out was made available via a separate website

CIVIL NO. 06-1645 (JP)          -6-

and a toll-free phone number. All of this was done in English and Spanish.[4]

On February 1, 2011 (No. 303-1), the First Circuit denied Colegio's request to stay the proceedings pending the resolution of its appeal of the protective order. The First Circuit also made it clear that if Colegio prevailed on its appeal, the notice and opt-out procedures could be repeated without the protective order.[5] Ignoring the First Circuit, Colegio and its President, Osvaldo Toledo Martínez, ("Toledo") decided that they would bypass the appeals process and take matters into their own hands.[6]

Class Plaintiffs filed two separate motions for orders to show cause (Nos. 306 and 311) as they had acquired evidence that Colegio and, in particular, Toledo was violating the protective order and other orders of this Court. The first motion to show cause was filed on February 3, 2011. On February 4, 2011, the Court granted the motion for an order to show cause and ordered Colegio to show cause on or before February 8, 2011 (No. 307).

---

4.   None of this covers the massive amount of media attention given to this case (No. 449, p. 4-5).

5.   In denying Colegio's request for a stay, the First Circuit also stated "it does not appear likely that Colegio could prevail on its constitutional claim."

6.   As the organization that purports to represent the legal profession in Puerto Rico should be well aware, there is an appeals process in place allowing for those who believe that lower courts have ruled incorrectly to voice their disapproval. This process is essential not only in ensuring that justice is served, but also in securing that society does not fall into the chaos that would follow from individuals doing as they please without regard for the law.

CIVIL NO. 06-1645 (JP)            -7-

On February 7, 2011, Class Plaintiffs filed the second motion for an order to show cause. Because of the seriousness of the allegations and the high probability that Colegio would continue its unruly behavior, the Court, on February 8, 2011, set a show cause hearing for the same day and ordered Colegio and Toledo to be present at the hearing and show why they should not be found in contempt of Court for the conduct described in Class Plaintiffs' motions at docket numbers 306 and 311 (No. 315).

Even though Colegio's attorneys informed the Court that Toledo had been provided with notice of the hearing and that his presence was required, Toledo failed to appear and present evidence. Class Plaintiffs presented evidence that: (1) an email was being circulated among class members containing the same opt-out form that the Court had previously rejected and which Colegio had created;[7] (2) Toledo sent out two emails to class members in direct violation of the protective order;[8] (3) Toledo spoke on a radio show about this case in direct violation of the protective order;[9] and (4) that a website

---

7. The Court rejected the form because: (1) Colegio proposed said opt-out form five days after the Class Action Notice had been mailed; (2) the opt-out form would create confusion among class members; and (3) the procedures for opting-out were so simple that no form was necessary (No. 305).

8. The emails contained more of the misleading information that Colegio had been providing to class members.

9. The contents of the radio show can only be described as astounding. In the radio show, Toledo misrepresented the status of the litigation, and the various district court and court of appeals decisions rendered in this case. In addition, Toledo made unsupported allegations of ideological conspiracies between federal courts and Class Plaintiffs to destroy Colegio. Toledo acknowledged that he was speaking on the radio show in direct violation of the Court's protective order. Toledo spoke about this case, the opt-out procedures, and requested that class members opt-out. He also admitted that

CIVIL NO. 06-1645 (JP)            -8-

had been created that provided information which could only be in the possession of Colegio. Colegio and/or Toledo presented no evidence or substantive arguments. Based on the overwhelming evidence that Colegio and Toledo had willfully violated the Court's Orders, the Court was left with no choice but to enter a finding of civil contempt against Colegio and Toledo (No. 319).[10]

In the civil contempt order, the Court expressed very serious concerns that Colegio's behavior was undermining the rule of law in Puerto Rico (No. 319, p. 11 n.7). Their decision to bypass legal procedure, to willfully violate Court orders, and, for all intents and purposes, to act as if they were above the law set a terrible precedent. As could only be expected, others began to follow Colegio's example. An attorney named Ada Conde-Vidal filed a motion with the Court in which she blatantly lied to the Court (No. 480, p. 15).[11] Perhaps the most shocking action was the commission of mail fraud. Said criminal conduct was committed by an unidentified individual who mailed falsified opt-outs in a falsified envelope to Rust Consulting, the company responsible for mailing the notices and

---

       he did not follow the Court's procedure on instructing attorneys inquiring about the opt-out procedures. Further, Toledo admitted that he ordered Colegio to email the opt-out form created by him to class members.

10.    The Court notes that Judge Saris also entered a finding of civil contempt against Colegio in the <u>Romero</u> case.

11.    Similarly, the Court determined that three non-profit legal organizations had also presented statements not supported by the record and in direct contradiction with the actions of the executive directors of said organizations (No. 480). The Court was able to identify said untruthful statements because of the filings of an attorney at docket number 411.

CIVIL NO. 06-1645 (JP)         -9-

counting the opt-outs (Nos. 474, 498 and 531). This unfortunate turn of events provides a clear example as to why any association which purports to represent the legal profession should be mindful of its responsibility to society. Especially, its responsibility to set a high standard, a good example for its members, the legal profession, and the legal system as a whole.

Almost a month after the deadline for opting-out had passed and after the parties had been provided with a spreadsheet detailing the opt-out information by the Court-approved administrator, the Court ordered the parties to examine and audit the spreadsheet and to provide the Court with any issues that they could not resolve on their own (Nos. 505 and 523). The Court gave the parties more than sufficient time to complete this process and warned the parties that no extensions would be granted.

On April 7, 2011, the Court resolved the disputes presented by the parties and ordered the parties to provide the Court with: (1) a proposed final opt-out list; (2) a proposed final class member list; and (3) the updated damages amount owed by Colegio (No. 531). The Court ordered the parties to recalculate the damages amount owed by Colegio in full compliance with the First Circuit's Opinion. Also, the Court ordered the parties to file the information under seal so the Court could review and approve the updated information prior to removing the viewing restrictions.

CIVIL NO. 06-1645 (JP)        -10-

## II.

## APPROVAL OF FINAL OPT-OUT AND CLASS MEMBER LISTS

Before the Court is the joint informative motion by the parties (**No. 537**) containing the final opt-out list (No. 537-1) and the final list of individuals who remain in the damages class (No. 537-2). Said motion is **NOTED**. The final opt-out list is composed of both the class members who opted-out voluntarily and the class members who were opted-out by the Court for equitable considerations.[12] The numbers are as follows:

1.   **Individuals who chose to opt-out:    6,771 (around 50% of class)**

2.   **Individuals who did not opt-out:    6,675 (around 50% of class)**

3.   **Individuals opted-out by the Court: 348 (around 3% of class)**

4.   **Total amount opted-out: 7,119 (around 53% of class)**

5.   **Total amount remaining in class:    6,327 (around 47% of class)**

The parties in this case have examined the opt-outs and, after incorporating the changes ordered by the Court, they provided the Court with the proposed final lists. After examining the proposed lists, the Court **APPROVES** the final opt-out and class member lists. The Court hereby **ORDERS** the Clerk of Court to remove the viewing restrictions on the opt-out list and the list of individuals who remained in the class (No. 537). Any questions as to why an

---

12.   The Court opted-out class members who passed away between 2002-2006 and who collected on Colegio's life insurance.

CIVIL NO. 06-1645 (JP)         -11-

individual has been or was not opted-out **SHALL** be directed at Class Plaintiffs' counsel.

### III.

### RECALCULATED DAMAGES AMOUNT

The parties have also provided the final amount of damages to be paid by Colegio (**No. 540**). Said motion is **NOTED.** The Clerk of Court **SHALL** remove the viewing restrictions on docket number 540. The final amount of damages owed by Colegio for their violation of class members' constitutional rights equals **$1,971,663.26.** Said calculation was performed in accordance with the First Circuit's orders. Brown, 613 F.3d at 54 (stating that "the district court may reinstate a damage award calculated as before but this time excluding damages otherwise attributable to those who have opted out of the class"). As such, the Court will enter Final Judgment incorporating the recalculated damages. **On or before April 25, 2011,** Class Plaintiffs **SHALL** either file their motion for attorneys' fees or inform the Court that they wish to file the motion after the appeals process is completed.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 13th day of April, 2011.

                                            S/JOSE ANTONIO FUSTE
                                            JOSÉ ANTONIO FUSTÉ
                                            CHIEF U.S. DISTRICT JUDGE